IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

:
CARMEN RAMOS
   :
   v.   :   Civil Action No. DKC 11-3022
   :
BANK OF AMERICA, N.A., et al.
   :

**MEMORANDUM OPINION**

Presently pending and ready for review in this diversity action are two motions: a motion to dismiss (ECF No. 12), and a motion to stay pretrial deadlines and discovery (ECF No. 21), both filed by Defendants Bank of America, N.A., and BAC Home Loan Servicing, LP.[1] The issues have been fully briefed, and the court now rules, no hearing deemed necessary. Local Rule 105.6. For the following reasons, the motion to dismiss will be granted, and the motion to stay will be denied as moot.

**I.   Background**

   **A.   Factual Background**

The complaint alleges the following facts. The United States Treasury Department's Home Affordable Modification Program ("HAMP") is a national program designed to stem the home foreclosure crisis by providing affordable mortgage loan

---

[1] According to Defendants' motion, the proper name of Defendant BAC Home Loan Servicing, LP, is "BAC Home Loans Servicing, LP." (ECF No. 12, at 1). The clerk will be directed to correct the party name in this case.

modifications and other alternatives to eligible borrowers. On April 17, 2009, Defendants entered into a Servicer Participation Agreement with the U.S. Treasury agreeing to comply with HAMP's requirements. Under HAMP, prospective borrowers enter into a standardized contract, called a Trial Period Plan ("TPP"), with lenders/servicers such as Defendants for a three-month trial modification of the borrower's existing note and mortgage. The TPP promises that if the borrower complies with the terms of the agreement and the borrower's representations continue to be true in all material respects, then the borrower will receive a permanent modification on the same terms.

In January 2011, Plaintiff Carmen Ramos suffered a reduction in her income as a result of a change in her employment. To remedy her economic situation, Ms. Ramos sought a HAMP loan modification from Defendants, who serviced Ms. Ramos's home mortgage. On February 3, 2011, Ms. Ramos contacted Defendants, who stated that they would send an "FHA-HAMP packet" to her. About a week later, Ms. Ramos received the FHA-HAMP packet, which contained the documents for applying to the FHA-HAMP program. On February 17, 2011, Ms. Ramos submitted the completed documents to Defendants. According to the complaint, between Ms. Ramos's first attempt at submitting the documents in February through April 29, 2011, there were numerous delays, and Defendants lost Ms. Ramos's paperwork multiple times. Although

the complaint is unclear on what exactly happened on or about April 29, 2011, it does allege that Defendants ultimately entered into a TPP with Ms. Ramos.  (ECF No. 2 ¶ 15). Otherwise, the complaint alleges that Defendants "systematically acted with carelessness, recklessness, negligence, bad faith, breach of care, breach of duty, breach of good faith and fair dealing, gross negligence and with deliberate indifference in its inaction of malfeasance, misfeasance and nonfeasance in [their] efforts or attempt to modify" Ms. Ramos's loan.  (*Id.* ¶ 25).

    B.   **Procedural Background**

On September 14, 2011, Ms. Ramos, proceeding *pro se*, filed a complaint against Defendants in the Circuit Court for Montgomery County, Maryland.  After service, Defendants timely removed to this court.  (ECF No. 1).  The complaint contains eleven counts:  (1) civil conspiracy to defraud; (2) unfair and deceptive trade practices; (3) aiding and abetting fraud; (4) fraudulent intentional misrepresentations and negligence; (5) unjust enrichment; (6) civil conspiracy; (7) violation of the Maryland Consumer Protection Act ("MCPA"); (8) commercial loan servicer violations of suppression; (9) breach of duty, care, and trust; (10) breach of good faith and fair dealing; and (11)

mental anguish, emotional distress and psychological trauma resulting in post-traumatic stress disorder.[2]

On October 28, 2011, Ms. Ramos moved to remand the case back to state court. (ECF No. 11). After Defendants responded (ECF No. 15), the court, in a memorandum opinion and order, denied the motion (ECF Nos. 19, 20).

Separately, on October 31, 2011, Defendants filed the pending motion to dismiss. (ECF No. 12). In accordance with *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court mailed a letter to Ms. Ramos notifying her that Defendants filed a dispositive motion. (ECF No. 13). Ms. Ramos opposed the motion on December 5, 2011. (ECF No. 27). On December 20, 2011, Defendants replied. (ECF No. 28).[3]

## II. Standard of Review

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). A plaintiff's complaint need only satisfy the standard of Rule

---

[2] Count Eleven is incorrectly styled as "Count X" in the complaint.

[3] On November 16, 2011, Defendants also filed the pending motion to stay pretrial deadlines and discovery, which requests a stay of all discovery until the resolution of the motion to dismiss. (ECF No. 21). As a scheduling order has not yet been entered in this case and the motion to dismiss will be resolved by this memorandum opinion and order, the motion to stay will be denied as moot.

8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed.R.Civ.P. 8(a)(2).  "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007).  That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).

At this stage, the court must consider all well-pleaded allegations in a complaint as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and must construe all factual allegations in the light most favorable to the plaintiff, *see Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)).  In evaluating the complaint, the court need not accept unsupported legal allegations.  *Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989).  Nor must it agree with legal conclusions couched as factual allegations, *Iqbal*, 556 U.S. at 678, or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979); *see also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009).  "[W]here the well-pleaded facts do not permit the court to infer more than

5

the mere possibility of misconduct, the complaint has alleged, but it has not 'show[n] . . . that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed.R.Civ.P. 8(a)(2)). Thus, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

**III. Analysis**

Defendants' initial argument proceeds as follows: Ms. Ramos seeks to enforce HAMP itself via the complaint; there is, however, no private right of action under HAMP; thus, the complaint must be dismissed in its entirety. (ECF No. 12-1, at 6-10). In response, Ms. Ramos contends that it is not HAMP generally that she seeks to enforce; rather, it is enforcement of the alleged TPP and the obtaining of a permanent loan modification that gives rise to all of her causes of action. (ECF No. 27, at 8-10).[4]

It is true that "Congress did not create a private right of action to enforce the HAMP guidelines." *See Allen v.*

---

[4] It is obvious that Ms. Ramos copied her complaint and her opposition in whole or in part from other sources. Contrary to Defendants' suggestion (*see, e.g.*, ECF No. 12-1, at 6), however, that fact does not preclude the court from considering Ms. Ramos's claims or arguments, particularly in light of her *pro se* status, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding *pro se* complaints to "less stringent standards than formal pleadings drafted by lawyers").

*CitiMortgage, Inc.*, No. CCB-10-2740, 2011 WL 3425665, at *8 (D.Md. Aug. 4, 2011). Courts in this district have held, however, that separate and apart from HAMP, enforcement of the TPP, if one exists, may give rise to a private right of action. *See Stovall v. SunTrust Mortg., Inc.*, No. RDB-10-2836, 2011 WL 4402680, at *11 (D.Md. Sept. 20, 2011); *Allen*, 2011 WL 3425665, at *4.

Neither party is completely correct in its assessment of the complaint. This confusion stems from factual inconsistencies within the complaint itself: even though Ms. Ramos clearly alleges that the parties have already entered into a TPP (ECF No. 2 ¶ 15) and that its enforcement is the goal of this suit, some of her claims appear to ignore that allegation and instead seek a preliminary loan modification (i.e., a TPP). Claims based on the latter scenario cannot stand, however. By disregarding the allegation that a TPP exists and seeking a preliminary loan modification, these claims are, in effect, attempting to enforce the HAMP guidelines. They must therefore be dismissed because there is no private right of action to enforce HAMP. *See Allen*, 2011 WL 3425665, at *8. Here, Counts One, Three, Four (as it pertains to fraudulent misrepresentation), and Six fall within this category of claims. On Count Four, Ms. Ramos alleges that as a result of Defendants' fraud, her TPP application was improperly rejected. (*See* ECF

7

No. 2 ¶ 45). She intimates that no TPP was ever entered into, though one should have been. (*See id.*). Counts One, Three, and Six are all predicated on the fraud alleged under Count Four. (*See id.* ¶¶ 27-29, 34-40, 56-59). As the claims under these counts attempt to enforce HAMP by demanding a TPP, they may not proceed.[5]

The remaining claims will be construed as seeking to enforce the TPP itself or some other right independent of HAMP. To facilitate this analysis, certain related claims will be discussed together rather than in the order they appear in the complaint.[6]

### A. Unfair and Deceptive Trade Practices (Count Two) and Violation of the MCPA (Count Seven)

Defendants contend that Counts Two and Seven should be dismissed, among other reasons, because they are not alleged with particularity, as is required for claims sounding in fraud.

---

[5] Even if these claims could stand, Ms. Ramos has likely abandoned them. As Defendants note in their reply (ECF No. 28, at 4-5), Ms. Ramos failed to respond to Defendants' motion on Counts One, Three, Four, and Six. (Nor, in fact, did she address Defendants' arguments as to Counts Five, Eight, Nine, and Eleven.) By her failure to address Defendants' arguments in her opposition, Ms. Ramos has abandoned these claims. *See Ferdinand-Davenport v. Children's Guild*, 742 F.Supp.2d 772, 783 (D.Md. 2010) (citing *Mentch v. E. Sav. Bank, FSB*, 949 F.Supp. 1236, 1247 (D.Md. 1997)); *Schalk v. Associated Anesthesiology Practice*, 316 F.Supp.2d 244, 250 n.8 (D.Md. 2004).

[6] No party suggests that any state's law other than Maryland's applies to all claims.

(*See* ECF No. 12-1, at 11-14). As a threshold matter, Defendants assume that Counts Two and Seven are duplicative of each other as setting forth a claim under the MCPA.[7] Ms. Ramos does not dispute this characterization. Ms. Ramos merely responds, in relevant part, by citing a litany of deceptive actions and non-actions that Defendants allegedly performed. (ECF No. 27, at 10-11). Defendants correctly reply that Ms. Ramos does not actually rebut any of their arguments. (ECF No. 28, at 5). As Ms. Ramos does not disagree with Defendants' construction of her claims under Counts Two and Seven, they will be analyzed as asserting the single MCPA cause of action that Defendants describe.

Although Count Seven contains no independent factual allegations of its own, Count Two alleges that "a faction and scheme existed" and that Defendants used a "faction and scheme to defraud" Ms. Ramos. (ECF No. 2 ¶¶ 31, 33). These allegations suggest that Ms. Ramos's MCPA claim sounds in fraud. Thus, it is subject to the heightened pleading standards of Federal Rule of Civil Procedure 9(b). *See Allen*, 2011 WL 3425665, at *9 (subjecting the plaintiff's MCPA claim to Rule 9(b) where the complaint alleged that the defendant violated the

---

[7] Despite the lack of a reference to the MCPA in Count Two, this interpretation is reasonable given that the MCPA specifically defines the term "unfair or deceptive trade practices." *E.g.*, Md. Code Ann., Com. Law § 13-301.

statute by "making deceptive representations, failing to disclose relevant information, and making false or misleading representations to borrowers with respect to the TPP Agreement").

Rule 9(b) states that "in alleging a fraud or mistake, a party must state with particularity the circumstances constituting the fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Such allegations typically "include the 'time, place and contents of the false representation, as well as the identity of the person making the misrepresentation and what [was] obtained thereby.'" *Superior Bank, F.S.B. v. Tandem Nat'l Mortg., Inc.*, 197 F.Supp.2d 298, 313-14 (D.Md. 2000) (quoting *Windsor Assocs., Inc. v. Greenfeld*, 564 F.Supp. 273, 280 (D.Md. 1983)). "[L]ack of compliance with Rule 9(b)'s pleading requirements is treated as a failure to state a claim under Rule 12(b)(6)." *Harrison*, 176 F.3d at 783 n.5.

Here, Ms. Ramos has failed to plead her MCPA claim with sufficient particularity. At best, the complaint reads:

> At all times present hereto a faction and scheme existed and participated in by all defendants for promise of financial gains and or goods and services.
> . . . .
> As a direct and proximate result of all Defendants actions, Plaintiff have suffered great economic and financial loses including monies paid to lawyers and time from work

10

> and continue to suffer losses as a result of the defendants malfeasances by way of felonious faction and scheme to defraud the Plaintiff out of their credit, money and property as stated above.

(ECF No. 2 ¶¶ 31, 33) (errors in original). These allegations are insufficient under Rule 9(b). Ms. Ramos fails to allege the bare minimum of facts; there is no indication of the time, place, or content of the alleged fraud. It is also not clear which of the two Defendants is implicated by these allegations.

As noted above, in her opposition, Ms. Ramos attempts to rectify the inadequacy of her pleadings under Counts Two and Seven by listing a variety of fraudulent actions and non-actions that Defendants allegedly undertook, which she alleges constitute unfair or deceptive trade practices under the MCPA. (ECF No. 27, at 10-11). These newly alleged facts, however, may not be considered here. *See Zachair, Ltd. v. Driggs*, 965 F.Supp. 741, 748 n.4 (D.Md. 1997) (holding that facts contained in an opposition to a motion to dismiss but not within the complaint itself cannot be considered). Even if they could be considered, they are still far too generalized in nature to come close to meeting the requirements of Rule 9(b).

In sum, Ms. Ramos has not met the requirements of Rule 9(b), and Counts Two and Seven will therefore be dismissed,

albeit without prejudice.[8] Any future amendments to these counts must at least state the time, place, and contents of alleged misrepresentations and other actions *that were made specifically to Ms. Ramos*, as well as who made the representations or acted deceptively and what that person obtained thereby. It is not enough to aver the general nature of Defendants' compliance, or lack thereof, with HAMP; every factual allegation in support of a potential MCPA claim must be grounded in Defendants' actual conduct pursuant to the TPP.

### B. Negligence (Count Four)

As to the negligence claim under Count Four, Defendants move to dismiss on the basis that, as a matter of law, there is no duty they could have breached. (ECF No. 12-1, at 18-19). Indeed, "[i]n order to maintain a tort cause of action based on negligence, the plaintiff must first establish that 'the defendant was under a duty to protect the plaintiff from

---

[8] Ms. Ramos's exposition of the recent trend of courts permitting HAMP-related claims to proceed under state consumer protection laws has no bearing on this analysis. (ECF No. 27, at 13-17). First, as is plainly evident, the court has not barred her MCPA claim merely because it is related to HAMP. Second, almost all of the cited authority implicates the law of other states. The only cited case that addresses the MCPA is distinguishable because the plaintiffs in that case, unlike here, had pleaded the MCPA claim with sufficient particularity. *See In re Bank of Am. Home Affordable Modification Program (HAMP) Contract Litig.*, No. 10-md-02193-RWZ, 2011 WL 2637222, at *5 (D.Mass. July 6, 2011) (addressing several states' laws, including Maryland's, as an MDL court).

injury.'"  *Jones v. Hyatt Ins. Agency, Inc.*, 356 Md. 639, 653 (1999).  Assuming Ms. Ramos attempts to pursue a negligence claim by alleging that Defendants owed her a duty of care arising out of the TPP, she must identify a duty separate from that imposed by the putative TPP contract itself.  In Maryland, a "contractual obligation, by itself, does not create a tort duty.  Instead, the duty giving rise to a tort action must have some independent basis.  This principle is applicable even when the failure to perform the contract results from the defendant's negligence."  *Jones*, 356 Md. at 654 (internal quotations and citations omitted); *see also Heckrotte v. Riddle*, 224 Md. 591, 595 (1961) ("The mere negligent breach of a contract, absent a duty or obligation imposed by law independent of that arising out of the contract itself, is not enough to sustain an action sounding in tort.").

The bare fact that Ms. Ramos and Defendants may have been in a borrower/lender relationship does not impose any special tort duty.  *See Gephardt v. Mortg. Consultants, Inc.*, No. JFM-10-1537, 2011 WL 531976, at *5 (D.Md. Feb. 8, 2011) ("It is well established under Maryland law that, absent special circumstances, 'the relationship of a bank to its customer in a loan transaction is ordinarily a contractual relationship between debtor and creditor, and is not fiduciary in nature.'" (quoting *Yousef v. Trustbank Sav., F.S.B.*, 81 Md.App. 527, 536

(1990))). In general, "[c]ourts have been exceedingly reluctant to find special circumstances sufficient to transform an ordinary contractual relationship between a bank and its customer into a fiduciary relationship or to impose any duties on the bank not found in the loan agreement." *Parker v. Columbia Bank*, 91 Md.App. 346, 369 (1992).

Here, the complaint does not allege any facts describing special circumstances to suggest that Defendants owed Ms. Ramos a duty above and beyond what was allegedly agreed upon in the TPP. If Ms. Ramos believes that a duty of care related to the TPP was breached, she may have a straightforward breach of contract claim.[9] But, as alleged, she does not have a negligence claim. Accordingly, this claim cannot go forward.

### C.   Unjust Enrichment (Count Five)

Defendants argue that Ms. Ramos's unjust enrichment claim cannot be maintained because the Promissory Note is an express contract that governs their rights, and the existence of such an express contract bars a claim for unjust enrichment. (ECF No. 12-1, at 20). Ms. Ramos does not respond.

It is generally true that, "[i]n Maryland, a claim of unjust enrichment, which is a quasi-contract claim, may not be

---

[9] If Ms. Ramos intends to come back with an amended complaint that includes a breach of contract claim, she would be well-advised to attach at least a copy of the alleged TPP that she and Defendants are party to.

14

brought where the subject matter of the claim is covered by an express contract between the parties." *Janusz v. Gilliam*, 404 Md. 524, 537 (2008) (internal quotations omitted); *see also FLF, Inc. v. World Publ'ns, Inc.*, 999 F.Supp. 640, 642 (D.Md. 1998) ("It is settled law in Maryland, and elsewhere, that a claim for unjust enrichment may not be brought where the subject matter of the claim is covered by an express contract between the parties."). In this case, the allegations in Count Five suggest that Ms. Ramos's unjust enrichment claim is based upon her belief that the *initial* loan that she took out on her home was unfair — not the TPP. (*See* ECF No. 2 ¶¶ 49-55). Because the Promissory Note expressly defines the parties' obligations under the initial loan, an unjust enrichment claim will not lie on that basis.

If Ms. Ramos instead intended to base her unjust enrichment claim upon Defendants' alleged breach of the TPP, the existence of the TPP would not necessarily bar her claim. *See Cnty. Comm'rs v. J. Roland Dashiell & Sons, Inc.*, 358 Md. 83, 100 (2000) (listing exceptions to the general rule that express contracts bar unjust enrichment claims, including where the contract has been breached). The complaint, however, would fail to state a claim in that case per *Iqbal* and *Twombly*; nowhere in the complaint are any non-conclusory facts set forth suggesting that Defendants obtained an unfair benefit by entering into the

15

TPP with Ms. Ramos.  Because Ms. Ramos may be able to rectify this deficient pleading in Count Five, it will be dismissed without prejudice.

### D. Commercial Loan Servicer Violations of Suppression (Count Eight), Breach of Duty, Care, and Trust (Count Nine), and Breach of Good Faith and Fair Dealing (Count Ten)

Counts Eight, Nine, and Ten must be dismissed because, as Defendants observe (ECF No. 12-1, at 21-22), none of them describe a recognized cause of action in Maryland.

First, as to Count Eight, Ms. Ramos cites no authority — nor is the court aware of any — holding that "Commercial Loan Servicer Violations of Suppression" is a cognizable cause of action.  Even if it were, Ms. Ramos provides no facts to support her claim.  Thus, Count Eight will be dismissed.

Second, as to Count Nine, Defendants are unable to decipher what cause of action Ms. Ramos intended to advance.  Ms. Ramos failed to address this count in her opposition and thus has not provided any clarification.  It appears that she may have intended to assert a claim akin to a breach of fiduciary duty.  Assuming that is the case, her claim would fail.  In Maryland, "[i]n a claim for monetary damages at law . . . an alleged breach of fiduciary duty may give rise to a cause of action, but it does not, standing alone, constitute a cause of action." *George Wasserman & Janice Wasserman Goldsten Family LLC v. Kay*,

197 Md.App. 586, 630 (2011). Accordingly, as Ms. Ramos's only relief sought is monetary, a breach of fiduciary duty claim is not viable.

And third, as to Count Ten, "no independent cause of action at law exists in Maryland for breach of the implied duty of good faith and fair dealing." *Mount Vernon Props., LLC v. Branch Banking & Trust Co.*, 170 Md.App. 457, 472 (2006). Such a breach "is better viewed as an element of another cause of action at law." *Id.* Where, as here, it is alleged as an independent claim, it cannot be maintained.[10]

### E. Mental Anguish, Emotional Distress and Psychological Trauma Resulting in Post-traumatic Stress Disorder (Count Eleven)

Defendants construe Count Eleven as setting forth an intentional infliction of emotional distress cause of action (ECF No. 12-1, at 23-24), which Ms. Ramos does not dispute. Defendants contend that, assuming that is the case, the complaint fails to state a claim.

---

[10] Ms. Ramos futilely attempts to salvage Count Ten by citing to inapposite case law. For example, in *Gaudin v. Saxon Mortgage Services, Inc.*, No. C 11–1663 RS, 2011 WL 5825144 (N.D.Cal. Nov. 17, 2011), the court did not need to address whether a breach of good faith and fair dealing constituted an independent cause of action because the defendants moved to dismiss the complaint on other grounds. *Id.* at *5. Her other cited cases involve the law of other states, not Maryland's. *See, e.g.*, *Lyon Fin. Servs., Inc. v. Woodlake Imaging, LLC*, No. Civ.A. 04-CV-3334, 2005 WL 331695, at *8 (E.D.Pa. Feb. 9, 2005) (applying Pennsylvania law).

To recover for intentional infliction of emotional distress, Ms. Ramos must allege facts showing that Defendants' conduct was: (1) intentional or reckless, (2) extreme and outrageous, (3) causally connected to her emotional distress, and (4) the distress caused was severe. *Baltimore-Clark v. Kinko's Inc.*, 270 F.Supp.2d 695, 701 (D.Md. 2003) (citing *Harris v. Jones*, 281 Md. 560, 566 (1977)). "Each of these elements must be pled and proved with specificity. It is not enough for a plaintiff merely to allege that they exist; [s]he must set forth facts that, if true, would suffice to demonstrate that they exist." *Foor v. Juvenile Servs. Admin.*, 78 Md.App. 151, 175 (1989). The tort is rarely viable in Maryland. *See Respess v. Travelers Cas. & Sur. Co.*, 770 F.Supp.2d 751, 757 (D.Md. 2011). In fact, a court in this district recently held that it "cannot imagine *any* set of facts surrounding a mortgage transaction that would support an inference of extreme and outrageous conduct." *Asafo-Adjei v. First Savs. Mortg. Corp.*, No. RWT 09cv2184, 2010 WL 730365, at *5 (D.Md. Feb. 25, 2010).

Here, Ms. Ramos has come nowhere close to alleging facts sufficient to establish that Defendants' conduct was "extreme or outrageous." In fact, the complaint is wholly devoid of any facts, apart from the basic timeline of events leading to this suit, to support this count. Accordingly, Defendants' motion will be granted as to this claim.

## IV. Conclusion

For the foregoing reasons, the motion to dismiss filed by Defendants will be granted, and the motion to stay will be denied as moot. A separate order will follow.

           /s/                    
DEBORAH K. CHASANOW
United States District Judge
